AMERICAN FIDELITY and CASUALTY COMPANY, Inc., Appellant,

v.

The GREYHOUND CORPORATION, Appellee.

No. 15757.

United States Court of Appeals Fifth Circuit.

April 12, 1956.

Rehearing Denied June 25, 1956.

Herschel E. Smith, Cecyl L. Pickle, and Knight, Smith, Underwood & Peters, Miami, Fla., for appellant.

Willis H. Flick, T. J. Blackwell, Blackwell, Walker & Gray, Miami, Fla., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal arises out of litigation also discussed in Greyhound Corp. v. Excess Insurance Co., 5 Cir., argued the same day. 233 F.2d 630. The Excess Insurance Co. originated the proceedings by bringing an action against Greyhound, alleging that it had entered into a contract of insurance with Greyhound insuring Greyhound against loss from liability in excess of certain stated amounts; that Greyhound had contended that Excess was liable for damages arising out of a personal injury action against Greyhound, reported in Florida Greyhound Lines, Inc., v. Jones, Fla., 60 So.2d 396; and that there is no liability on its part for the loss thus suffered by Greyhound because Greyhound failed to give timely notice to Excess of the Joneses' claims of liability, as is required by the policy. The complaint sought declaratory relief that Excess was not liable to Greyhound for any amount based upon the judgments in the Jones case, and injunctive relief against Greyhound's instituting any action to recover such sums.

Greyhound answered, denying that it had been guilty of any breach of duty in the premises, and alleging that all conditions entitling it to recover against Excess had been performed. It also alleged that Excess had been in no manner harmed or prejudiced by Greyhound's acts or failures to act. In addition, it brought a third-party action against the Markel Service, Inc. and the appellant American Fidelity and Casualty Co., Inc. Its complaint in the third-party action alleged that, upon being served with process in the Jones case, it gave proper notice of the suit to Markel and American Fidelity and Casualty, its primary carriers; that the defense of the action thereupon passed into the hands of the third-party defendants; that although the ad damnum clauses in the Jones case were raised (thereby increasing the possibility of a recovery in excess of the amount covered by the primary policy), the third-party defendants failed to notify either Greyhound or Excess of this amendment, al-

though it knew of the existence of excess coverage under the contract of insurance entered into between these two last-named parties; that Greyhound was guilty of no breach of duty in the premises; and that, if Excess' liability was discharged by its not receiving notice of the amendment of the ad damnum clauses in the Jones case, then the third-party defendants breached a duty owed to Greyhound to settle the Jones case, because although there was no defense to it, the third-party defendants refused to settle, but proceeded to trial, incurring liability on Greyhound's part to the Joneses for damages which they recovered in excess of the limits of the primary policy, which Excess refuses to pay. Later Greyhound amended its third-party complaint to allege, inter alia, that the third-party defendants were guilty of bad faith and negligence in conducting the settlement negotiations in the Jones case.

Subsequently the trial court granted motions for summary judgment made by Excess and Markel, and from the first of these judgments Greyhound appealed in Greyhound Corp. v. Excess Insurance Co., 5 Cir., supra. After answer by American, denying all the allegations of the amended third-party complaint, the claim of Greyhound against American went to trial, resulting in a judgment entered on a jury verdict for Greyhound. This is the judgment from which American appeals here.

American has assigned several specifications of error, but in the view which we take of the case, only two questions need be considered: (1) whether American's objections to its being impleaded into the case were properly overruled; (2) whether the court correctly instructed the jury regarding American's duty to Greyhound while conducting settlement negotiations in the Jones case. If the first question is answered in the negative, then the entire action against American must be dismissed. City of Philadelphia, to Use of Warner Co. v. National Surety Corp., 3 Cir., 140 F.2d 805. If only the second question is answered in the negative, Greyhound's suit against American cannot be dismissed, but must be remanded for a new trial.

With regard to the first question, the applicable provision is set forth in Fed. Rules Civ.Proc. rule 14(a), 28 U.S.C.A.:

"Before the service of his answer a defendant may move ex parte or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

American contends that impleader should not have been allowed in this case because the third-party complaint does not allege that American is liable to Greyhound for any part of the claim which Excess asserted against Greyhound. The objection, we think, places too restrictive a meaning on the words "all or part of the plaintiff's claim", in the Rule.

The complaint filed by Excess in effect alleged a breach of contract by Greyhound in failing to comply with a provision in the policy that

"Upon the occurrence of any accident which may involve liability on the part of the company, the assured shall give immediate written notice thereof with the fullest information obtainable at the time to the company at 99 John Street, New York, New York. The assured shall give like notice with particulars of any claim made on account of such accident. If any suit is brought against the assured to enforce such claim, the assured shall immediately forward to the company copies of every summons or other process that may be served upon the assured."

Greyhound asserted in defense that "immediate written notice" means notice within a reasonable time, which depends upon all the circumstances of the case, including its own knowledge or lack of knowledge of the seriousness of the claim. The third-party complaint filed

by Greyhound against American alleged, in addition to negligence and bad faith in the conduct of settlement negotiations with the Joneses, that American, although it knew of the excess coverage, failed to notify either Greyhound or the excess carrier of the possibility that excess would be involved, until three weeks before trial; and this, although there was growing evidence as time went by that the limits of the primary policy would be exceeded. The position assumed by Greyhound was therefore, first, that it acted with due diligence in giving notice of the Jones suit to Excess, considering the knowledge with which it had been provided by American; and second, that if it failed so to act, this failure was due to American's negligence or bad faith in failing to communicate that knowledge, either to Greyhound or to Excess. Both actions were therefore concerned with the external facts and the inferences to be drawn from them regarding the period after the Joneses were injured and until the appeal in Florida Greyhound Lines, Inc., v. Jones, Fla., 60 So.2d 396. In brief, the acts or transactions involved in both cases are much the same, although the claims are by no means identical or even based on the same theory, the first being for breach of contract and the second for tort.

▮▮ It is settled that impleader under Rule 14(a) does not require an identity of claims, or even that the claims rest on the same theory.[1] Otherwise the purposes of the Rule would be defeated.[2] Plainly, if the theories differ, the facts supporting each will differ, and the question is what degree of difference will be allowed in the facts relied upon. In answering this question, the purposes of the Rule, including the desire to avoid circuity of actions and to obtain consistent results, must be balanced against any prejudice which the impleaded party might suffer, and these considerations

are left to the discretion of the trial court. Baltimore & Ohio Railroad Co. v. Saunders, 4 Cir., 159 F.2d 481; General Taxicab Ass'n v. O'Shea, 71 App.D.C. 327, 109 F.2d 671.

▮ In the instant case, we cannot say that this discretion has been abused. Greyhound's defense to Excess' suit was that it gave notice with due diligence upon receiving knowledge from American of the likelihood of an excess recovery. It sued American on the theory that American negligently or in bad faith failed to provide it with the information it needed to make the proper decision regarding notification to Excess. These questions turn on substantially the same facts, and although there were other, distinctly separate questions involved, notably the interpretation of the contract between Excess and Greyhound, and American's alleged negligence or bad faith in negotiating with the Joneses, the common issues were so closely intertwined that consistent results probably depended upon their being decided at one time. The question might receive a different answer if it could be shown that American was in any real sense prejudiced by being brought into the case with Excess, instead of being sued separately, but American asserts no convincing grounds for its claims of prejudice. Therefore, we must conclude that impleader was properly allowed.

▮ The substantive question involves certain jury instructions and refusals to charge by the trial court regarding American's duty to Greyhound while conducting settlement negotiations with the Joneses. Early in its charge to the jury, the court stated:

"In the case here, the only thing you have got to consider is whether or not this insurance company, under the definition that I will give you, exercised bad faith as respect to the Greyhound Corporation in the

1. Hubshman v. Radco, Inc., D.C.S.D.N.Y., 71 F.Supp. 601; Crum v. Appalachian Electric Power Co., D.C.S.D.W.Va., 29 F.Supp. 90.

2. 3 Moore's Federal Practice ¶14.04.

conduct of the settlement negotiations or the attempts at settlement."

Near the conclusion, however, it stated:

"In settlement negotiations, the company is held to that degree of care and diligence which a man of ordinary care and prudence should exercise in the management of his own business."

The latter instruction was the source of strong objection by American's counsel earlier in the day, when the instructions were argued. The court at that time conceded, "Mere negligence is not sufficient," but defended the charge on the ground that it was a close paraphrase from the opinion in Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852, the only Florida case on point. American's counsel asserted that the instruction "is not the law of Florida" and "is confusing to the jury." The court answered, "It is confusing to me, not only the jury."

We agree with the appellant in its assertions that the instruction was both confusing and incorrect.

In the Shaw case, the declaration alleged that the insurance company was guilty of bad faith and negligence in not paying or settling Shaw's claim against a policyholder, with the result that Shaw's judgment against the policyholder went unsatisfied for the amount above the limits of the policy. The case was submitted to the jury on instructions not set forth in the opinion, and judgment was entered on the jury verdict returned in favor of Shaw. The Supreme Court of Florida reversed. The court stated that Shaw had a right to maintain an action against the company, as a third party beneficiary under the policy; however, it held the evidence insufficient to sustain the verdict "in light of the rule of law controlling the case." 184 So. 852, 859. After citing and quoting cases from other jurisdictions, it summed up this rule as follows:

"It appears that the insurance company in the settlement of claims and in conducting a defense before the court on suits filed should be held to that degree of care and diligence which a man of ordinary care and prudence should exercise in the management of his own business. [Citing cases.] The prevailing rule seems to be, however, that the insurer must act in good faith toward the assured in its effort to negotiate a settlement. This the defendant concedes * * * considering that the action below cannot be sustained either upon the theory of negligence or of implied contract, but that it may be supported upon the allegations of bad faith exercised in the settlement negotiations by the defendant to the plaintiff." 184 So. 852, 859.

It thus appears quite clear that the Florida Supreme Court, in the Shaw case, aligned itself with the majority of jurisdictions adhering to the good faith test of the duty placed upon an insurer, rather than the negligence test. See Note, 40 A.L.R.2d 162, especially pp. 178, 223.

Greyhound defends the charge on the ground that the Supreme Court of Florida, in the Shaw case, "did not adopt the bad faith rule over the negligence theory." As noted above, this contention is incorrect. Greyhound also asserts that the jury "had to be charged" that the insurer in the settlement of claims is held to that degree of care and diligence which a man of ordinary prudence should exercise in the management of his own business. This is likewise untenable, for the court in the Shaw opinion stated that the insurer "should be" held to that degree of care but went on to add that the prevailing rule seemed to require only good faith. Nor can we sustain Greyhound's argument that because evidence of negligence is admissible on the question of good faith, the test is thus in effect converted from good faith to due care.

We believe we have placed the correct interpretation on the Florida court's opinion in the Shaw case. At all events the Shaw opinion gives no intimation

that Florida will follow those jurisdictions which have construed "good faith" so as to give it strong overtones of due care. Therefore, the instruction that the insurer is held to a standard of due diligence was wrong and, despite other charges to the contrary, may well have confused the jury and could have formed the basis for a verdict contrary to law. The case must therefore be remanded for a new trial.

Reversed and remanded.