SOUTHERN MILLING COMPANY,
Appellant,

v.

UNITED STATES of America et al.,
Appellees.

No. 17626.

United States Court of Appeals
Fifth Circuit.

Aug. 31, 1959.

Rehearing Denied Sept. 25, 1959.

Cameron, Circuit Judge, dissented in part.

T. Baldwin Martin, Macon, Ga., Martin, Snow, Grant & Napier, Macon, Ga., of counsel, for appellant.

Erwin A. Friedman, Perry Brannen, Savannah, Ga., William T. Morton, Asst. U. S. Atty., Augusta, Ga., Brannen, Clark

82

& Hester, Savannah, Ga., William C. Calhoun, U. S. Atty., Augusta, Ga., for appellees.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

On April 23, 1954, the United States Department of Agriculture issued its Announcement No. LD–6 offering, on behalf of Commodity Credit Corporation, to sell in car lots nonfat dry milk for use, prior to November 1, 1954, as an ingredient in animal and poultry mixed feeds at 3.5 cents per pound. Paragraph 5 of the Announcement stipulated for a use warranty by the purchaser that milk would not be sold by it except in the form of mixed animal or poultry feed. The purchaser was required by Paragraph 6 of the Announcement to furnish to Commodity Credit Corporation certificates showing the use of the milk purchased for the restricted purposes. In Paragraph 7 of the Announcement was con-

tained a provision that if the milk was not used for the permitted purpose within the specified time the purchase price would be increased to that at which dry milk was being sold for unrestricted uses. Failure to supply certificates would result in a conclusive presumption that the milk was used for other than the restricted use.[1] The appellant purchased two cars of milk at the 3.5 cent price. The Commodity Credit Corporation, on August 31, 1954, sent the directors of Commodity Credit Offices an amendment to the Announcement[2] which authorized the resale of dry milk by purchasers under Announcement LD-6 on the conditions and subject to the terms of the Amendment.

The appellant learned that purchasers of dry milk for the restricted use might resell for the same restricted use, but appellant did not, so it asserted, see the amendment nor learn of all of its provisions. The appellant negotiated a sale to

[1.] "7. Price Adjustment: Disposition of the nonfat dry milk solids for the restricted use contemplated by this announcement has been authorized as a part of the program to support prices to producers of milk and butterfat. The sale price for such uses are below the CCC published domestic sales price for unrestricted use of such milk and are in consideration of the restricted use to which milk will be put and are contingent upon the milk being so used within the period provided herein. Regardless of the grade or quality of the milk delivered by CCC, the sales price for the milk delivered and not used in accordance herewith will be adjusted by adding to the sales price for restricted use a sum equal to the difference between such sales price and the CCC domestic sales price for unrestricted use for U. S. Extra Grade spray process nonfat dry milk solids current on the date of delivery by CCC for the State in which delivery is made, and the purchaser will promptly pay to CCC upon demand the balance due on the adjusted purchase price. With respect to any milk not put to the restricted use, as warranted in accordance with paragraph 5, prior to November 1, 1954, as evidenced by the certificate required by paragraph 6, or otherwise, and with respect to any milk with respect to which the purchaser fails to supply the

certificate as required, it is agreed that it shall be conclusively presumed that such milk has been used or is to be used for other than the permitted restricted use and the purchase price shall be adjusted accordingly. Notwithstanding the conclusive presumption CCC may, in its absolute discretion, for good cause shown, grant an extension of time for the filing of the certificate as provided in paragraph 6."

[2.] "Directors of Commodity Offices selling nonfat dry milk solids under Announcement LD–6 are hereby authorized to authorize buyers of such milk which has been delivered to them to sell it to others for use in animal and poultry mixed feed before November 1, 1954, provided that at the time of such sale they obtain from such other purchasers, and forward to the Commodity Office, written statements addressed to Commodity Credit Corporation agreeing to comply with all terms and conditions of LD-6 including use warranty and proof of use certificate and provided further that they will deliver the milk to such other purchasers at a price not exceeding the price paid to CCC for it. The Commodity Office responsible for obtaining proof of use certificates must be advised of all such transactions."

Meddin Packing Company of the two carloads of milk at a price of six cents a pound. The milk was delivered and the price was paid. Commodity Credit Corporation, upon being informed that the appellant had made the sale to Meddin requested the appellant to procure from Meddin certificates as to the use of the two cars of milk. Meddin declined to furnish the certificates. The United States brought suit against the appellant for the difference between the 3.5 cents per pound charged for the two cars of milk and 17 cents per pound, the Commodity Credit Corporation's dry milk price for unrestricted use. The appellant answered, admitted the purchase, the resale and the inability to furnish use certificates executed by Meddin. It asserted Meddin agreed to use only in mixed animal feeds at the time it bargained to buy the milk from the appellant. It asserted it had never seen a copy of Announcement LD–6. Appellant, under Rule 14(a), Fed.Rules Civ.Proc. 28 U.S.C.A., brought in Meddin as a third-party defendant, and in its third-party complaint, made reference to its answer and averred that it was entitled to judgment against Meddin if and to the extent that the United States might recover against it. The district court entered a summary judgment for the United States against the appellant. Then, finding that the appellant and Meddin are both residents of Georgia and there was no Federal question as between them, the third-party complaint was dismissed. The appellant has appealed from the judgment of the United States against it and from the dismissal of the third-party complaint.

The only ground specified by the appellant as a basis of error in the entry of the judgment against it in favor of the United States is that the provision obligating purchasers to pay the difference between the 3.5 cent price and the current dry milk price for unrestricted use "is a provision for liquidated damages and is unenforceable as one imposing a penalty." There is a distinction between liquidated damages on the one hand and a penalty on the other. 25 C.J. S. Damages § 101 c, p. 654 et seq. The provision in the contract here involved is not a penalty. The appellant was given the privilege of purchasing a commodity at a greatly reduced price upon condition that it be used for a restricted purpose and that such use be established by an appropriate certificate, with a provision that if the condition be broken the buyer should pay the unrestricted use price. The provision is a reasonable one and the measure of damages provided is properly related to the stipulated condition. It does not invalidate this provision to refer to it as one for liquidated damages. The Supreme Court has recently sustained the validity of liquidated damage clauses in Government contracts and, in so doing, has said:

"The Government has the right to make contracts and hold and dispose of property, and, for the protection of its property rights, it may resort to the same remedies as a private person. Cotton v. United States, 11 How. 229. Liquidated damages are a well-known remedy, and in fact Congress has utilized this form of recovery in numerous situations. * * * Liquidated-damage provisions, when reasonable, are not to be regarded as penalties." Rex Trailer Co. v. United States, 350 U.S. 148, 76 S.Ct. 219, 221, 100 L.Ed. 149.

We also conclude that the record does not establish any amendment of the original contract of purchase or release of the restrictions imposed by that contract except as shown in the amendment to the announcement quoted in footnote 2, supra.

■ The summary judgment in favor of the United States against Southern Milling Company, Inc., was properly entered.

■ A more difficult question is presented by the appellant's assertion that its third-party complaint against Meddin Packing Company was erroneously dismissed. The Federal jurisdiction

of the suit of the United States against Southern Milling Company was based upon a Federal cause of action and under a statute which provided for exclusive jurisdiction in the Federal courts. 15 U.S.C.A. § 714b. A third-party proceeding under Rule 14 must be ancillary to the claim originally asserted although the third-party claim need not be identical with the plaintiff's claim or rest upon the same theory. American Fidelity & Casualty Co. v. Greyhound Corporation, 5 Cir., 1956, 232 F.2d 89. The third-party claim of Southern Milling Company against Meddin Packing Company was ancillary to the original suit. Where the claim is ancillary the right to assert and maintain the third-party claim is unaffected by the fact that the third-party claimant and the third-party defendant are residents of the same state; and it is unnecessary, where the original suit is based upon a Federal cause of action, that the third-party claim should involve a Federal question. 3 Moore's Federal Practice 499, Par. 14.26. The district court's discretion was regularly invoked by the appellant's motion to file a third-party complaint and was properly exercised. The third-party complaint was properly filed and the court acquired jurisdiction. The court, absent any abuse of its discretionary power, might have declined to permit the filing of the third-party complaint. After jurisdiction of the third-party proceeding was taken a summary judgment was entered for the plaintiff against the defendant. This was a final judgment on the merits as between the original parties and it was surely contemplated that a judgment would be entered on the merits for one party or the other at the time the filing of the third-party claim was authorized. If there had been no recovery against the appellant-defendant there could have been no liability on the third-party claim.

The only grounds asserted in the Motion of Meddin Packing Company to dismiss the third-party complaint and the only reasons given by the court for granting the Motion are that the appellant and Meddin Packing Company are both residents of Georgia, that no Federal question is involved and that Meddin Packing Company should be sued in the state court in the county of its residence. In the absence of a showing of substantial inconvenience to a third-party defendant, leave to file a third-party complaint should not be denied on the ground of venue. Gore v. United States, D.C.Mass. 1959, 171 F.Supp. 136. An even stronger showing should be made for the dismissal on such grounds of a third-party complaint properly brought, particularly where, as is here asserted, the statute of limitations would bar recovery on the claim if asserted in a new action. We reach the conclusion that the dismissal of the third-party complaint was erroneous. The conclusions here reached are not, we think, in conflict with the views of the Fourth Circuit in Duke v. Reconstruction Finance Corporation, 209 F.2d 204, certiorari denied 347 U.S. 966, 74 S.Ct. 777, 98 L.Ed. 1108, where the court recognized that an order dismissing a third-party complaint would be reversed for abuse of discretion.

The record on appeal includes an affidavit of the appellant's president in which factual recitals are made of matters which may be material to the controversy between the appellant and Meddin Packing Company. A motion has been filed with us by Meddin Packing Company reciting that the affidavit was not filed with the district court until after this appeal was taken and that it formed no part of the record in the district court, and asking us to conform the record by expunging the affidavit. The appellant has filed a response in which it says that the affidavit was before the district court at its hearing, was considered by it and should be considered by us. No effort has been made to comply with the requirement of the rule that "if any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth." Rule 75(h), Fed.Rules Civ.

Proc. 28 U.S.C.A.; 5th Cir. Rule 18, 28 U.S.C.A. Since we do not reach the merits of the third-party claim there has been no occasion to consider the affidavit.

The judgment in favor of the United States against Southern Milling Company, Inc. is affirmed. The order dismissing the third-party complaint of Southern Milling Company, Inc. against Meddin Packing Company is reversed and the third-party complaint will be reinstated and the cause remanded for further proceedings.

Affirmed in part and reversed in part.

CAMERON, Circuit Judge (concurring in part and in part dissenting).

I concur in that portion of the opinion which reverses and remands for trial the third party complaint. But I am unable to go along with my Brethren in affirming the action of the court below in rendering summary judgment in favor of the Government and against appellant. According to the uncontradicted facts set forth in appellant's answer, its treatment by representatives of the Commodity Credit Corporation was essentially unfair and the judgment against it was not warranted and works a manifest injustice upon it.[1]

It appears undisputedly from appellant's answer that it was not furnished with any copy of announcement LD–6 or any amendment thereto and never had access thereto until long after it had resold the dry milk. Moreover, the answer shows without dispute that a duly authorized representative of Commodity called its president on the telephone and advised him that, by recent amendment to its regulations, the resale forming the basis of the judgment against appellant was permitted. I know of no valid reason why appellant could not act upon information given it by the authorized representative of Commodity.[2] The nation's largest merchant must abide the laws of the market place where it chooses to deal and cannot cloak itself in the privileges and immunities of sovereignty which belong to it only when it is engaged in the function of governing.

In my opinion, moreover, "conclusive presumptions," especially when based only upon informal "announcements" by federal functionaries "deemings"[3] and "absolute discretion"[4] have no place in the democratic process. Such concomi-

---

1. The so-called summary judgment was based entirely upon the Government's complaint and exhibits which, to the extent they were controverted by defendant's answer, could not be accepted as the basis for summary judgment. The contracts sued on mentioned "announcement LD–6," but did not mention any amendments. The complaint does not allege any authority for said announcement, that appellant had any notice thereof, or that it was published in the Federal Register, or was otherwise rendered binding on these parties. Appellant's answer set up that said announcement was without legal authority and not binding upon it. The amendment upon which the Government places great reliance was dated August 31, 1954, more than a month after the two contracts of purchase had been made. It shows on its face that it was merely a teletype message and that it was sent to only six of Commodity's branch offices. Appellant's answer demanded proof of the C. C. C. domestic sales price of the dry milk in question, and no proof was offered. Without such proof the court had no jurisdiction to render summary judgment. The same is true of the teletype announcement of August 31st whose validity and controlling efficacy are necessary to the summary judgment.

2. Witness the language of this Court, used when the Government was trying to repudiate an action by one of its authorized officers: "Whether that decision was right or wrong, the accredited officer of the United States made it," Eichelberger & Co. v. Commissioner of Internal Revenue, 5 Cir., 1937, 88 F.2d 874, 875; and see 21 University of Chicago Law Review, p. 687, and the cases there discussed.

3. Derivatively, to deem means to doom. Cf. Bowers v. United States, 5 Cir., 1955, 226 F.2d 424, and dissenting opinion pages 429 et seq.

4. See last sentence of Note 1 of the majority opinion.

tants of autocracy tend to creep in only as that process edges towards socialism.

The judiciary has not found it difficult to discover or devise means by which to deal with unstinted generosity with communists,[5] murderers,[6] rapists,[7] and dope peddlers.[8] The solicitude and the resulting ingenuity thus exhibited should, I think, be shared with the small businesses of this country struggling to survive against heavy bureaucratic odds. From that portion of the opinion I respectfully dissent.

5. Cf. Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

6. Cf. United States ex rel. Goldsby v. Harpole, 5 Cir., 1959, 263 F.2d 71 (see same case Supreme Court of Mississippi, Goldsby v. State, 1955, 226 Miss. 1, 78 So.2d 762, certiorari denied 350 U.S. 925, 76 S.Ct. 216, 100 L.Ed. 809; 226 Miss. 19, 84 So.2d 528, certiorari denied 352 U.S. 944, 77 S.Ct. 266, 1 L.Ed.2d 239; 226 Miss. 30, 91 So.2d 750; 5 Cir., 249 F.2d 417; Miss., 102 So.2d 215).

7. Cf. Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

8. Cf. Gilmore v. United States, 5 Cir., 1958, 256 F.2d 565.