POWELL, INC., Plaintiff,

v.

James ABNEY, Virginia G. Abney, and Fairmont Metals Co., Inc., Defendants.

James ABNEY, Counterclaimant,

v.

POWELL, INC., Counterclaim Defendant and Third Party Plaintiff,

v.

UNION CARBIDE CORPORATION, Third Party Defendant.

Civ. A. No. L–77–83.

United States District Court,
S. D. Texas,
Laredo Division.

Sept. 18, 1979.

Carlos M. Zaffirini, Laredo, Tex., for plaintiff Powell, Inc.

Craig M. Fowler, Dallas, Tex., for defendants Abney and Fairmont Metals Co., Inc.

Robert R. Case, Jr., Harlingen, Tex., for third party defendant Union Carbide Corp.

## MEMORANDUM ORDER

KAZEN, District Judge.

This is a diversity action based upon an alleged breach of contract. While the facts of this case are fairly simple, they inevitably lead to some thorny procedural issues. The file reflects that Plaintiff, Powell, Inc. (Powell), is an Illinois corporation trading in specialty metals. One of Powell's suppliers was Fairmont Metals Co., Inc. (Fairmont Metals), a Texas company owned and operated by Defendants James and Virginia Abney. According to the pleadings, Powell generally bought from Fairmont Metals a scrap metal known an tantalum, mostly in the form of capacitators or contaminated anodes. Beginning on or about January 17, 1977, through approximately August 17, 1977, the Plaintiff made five purchases of tantalum from the Defendants. The metal was duly received and the Plaintiff paid on account to the Defendants the sum of $168,-000.00. The tantalum, according to a counterclaim filed by Defendant James Abney, was purchased from Third-Party Defendant, Union Carbide Corp. (Union Carbide). Abney claims that he paid for the tantalum by tendering separate checks to Union Carbide and to Raul Barreda, an employee of Union Carbide. While admitting that it did do business with the Abneys and Fairmont Metals, Union Carbide specifically denied in earlier pleadings in a related state court action that these Defendants were authoriz-ed purchasers of any of the tantalum involved in this controversy. Union Carbide further claimed in the same state action that Raul Barreda, in conjunction with Mr. Abney, entered into a plan or conspiracy to fraudulently deprive them of their tantalum. This scheme allegedly consisted of Raul Barreda, a mere warehouseman, surreptitiously making unauthorized sales to Mr. Abney and his agents, who would then sell or dispose of the material.[1] Sometime in the late summer or the early fall of 1976, according to Powell's original complaint, the FBI contacted Powell and told the company to hold any materials purchased from Fairmont Metals as there might be some problems regarding title to the goods. Powell, however, had already sold much of the material to its customers. On December 29, 1976, Powell filed this action against the Abneys and Fairmont Metals alleging that, as a result of the FBI's notification, Powell's customers were unable to dispose of the materials originally supplied by the Defendants and that their customers were holding Powell responsible for any damage that they might incur. The Plaintiff prayed for a constructive trust to be imposed on the $168,000.00 that it had paid Abney on account for the metal and additionally demanded indemnity for any damages for which it might ultimately be held responsible.

Subsequent to the filing of this suit, Union Carbide apparently replevied certain of the merchandise which Powell shipped and then sued Powell in Illinois state court for the differential.[2] That suit was settled for $50,000.00 on August 15, 1978, allegedly based on the representation by Union Carbide that it held sole title to the disputed

1. James Abney, Jr. was subsequently convicted in United States District Court, Southern District of Texas, Brownsville Division, on four counts of transportation of stolen goods in interstate commerce. *See* 18 U.S.C. § 2314 (1976). For his part in the crime, he was fined $5,000.00 and sentenced to serve five years in the federal penitentiary.

2. Union Carbide replevied goods destined from Powell to Thermoelectron. Another customer of Powell, Kennametal, returned goods that had already been shipped and these were eventually replevied directly from the Plaintiff. Because of the return of the goods by Kennametal, Powell allegedly had to reimburse the company monies paid on account and also had to pay additional monies so that Kennametal could replace the material that was replevied.

goods.[3] In 1978, Union Carbide also filed suit against the Abneys, Raul Barreda, and Fairmont Metals in Texas state court for conversion, fraud, conspiracy and deceptive trade practice. This case was settled as to the Abneys and Fairmont Metals on September 14, 1978. The result of this settlement was a complete release for the Abneys and Fairmont Metals. James Abney, now claiming complete ownership of the goods by virtue of the release, then amended his answer in the current action. In the amended answer, Abney not only disclaimed liability for the $168,000.00 that Powell paid on account but in addition, he counterclaimed for approximately $82,-000.00, which he claimed was the balance owing on the original purchase by Powell. Powell sought and was granted permission, by The Honorable Robert O'Conor, Jr., under Rule 14(b), to file a third-party complaint against Union Carbide, sounding essentially in fraud, alleging that, if Mr. Abney's claim as to ownership is correct, then Union Carbide fraudulently misrepresented the true state of facts concerning title to the goods and that Powell detrimentally relied on this representation. *See* Fed.R. Civ.P. 14(b). Third-Party Defendant, Union Carbide, now moves for dismissal of this complaint on the grounds of improper third-party practice, improper venue and failure to state a claim upon which relief can be granted. Alternatively, Union Carbide moves to strike the Plaintiff's complaint for failure to aver the circumstances of fraud with particularity. *See* Fed.R.Civ.P. 9(b).

■ Union Carbide has moved for the dismissal of Powell's third-party complaint. In support of its motion, Union Carbide argues that joinder is improper as Powell is seeking to assert a separate and independent cause of action under the guise of an impleader action. Rule 14(a) of the Federal Rules of Civil Procedure allows a defendant to bring into an action as a third-party defendant one who he claims is liable to him for all or any part of the plaintiff's claim

against him. Fed.R.Civ.P. 14(a); *see* 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1441 (1971). Rule 14(b), which is applicable in this case, places a plaintiff in the same position as a defendant under Rule 14(a) when a counterclaim is filed. Fed.R.Civ.P. 14(b); *see Kaiser Aluminum & Chemical Sales, Inc. v. Ralston Steel Corp.,* 25 F.R.D. 23, 25 (N.D.Ill.1959). The policy underlying Rule 14 is to promote judicial economy by eliminating circuity of action. 6 C. Wright & A. Miller, *supra,* at § 1442; *Tiesler v. Martin Paint Stores, Inc.,* 76 F.R.D. 640, 642 (E.D.Pa.1977). In order to effectuate these policies, the federal courts are directed to construe Rule 14 liberally. *See Tower Mortgage Corp. v. Reynolds,* 81 F.R.D. 560, 561 (W.D.Okl.1978). This Court also notes that " a third-party complaint should be dismissed only when there is not the slightest possibility that the proof will establish the ultimate liability of the third-party defendant." *Choate v. United States,* 233 F.Supp. 463, 464 (W.D. Okl.1964).

■ The law is well-settled that Rule 14 is not to be used as a vehicle for the assertion of an entirely separate and independent cause of action. *See U. S. General, Inc. v. City of Joliet,* 598 F.2d 1050, 1053 (7th Cir. 1979); *Cass v. Brown,* 41 F.R.D. 284, 286 (D.Colo.1966). Equally clear, however, is that Rule 14 is operative where the third-party plaintiff's claim against the third-party defendant is the outgrowth of the same aggregate or core of facts which is determinative of the original claim. *See Crompton-Richmond Co. v. United States,* 273 F.Supp. 219, 221 (S.D.N.Y.1967). Allowing impleader in such a situation makes much judicial sense since "[w]hen the rights of all three parties center upon a common factual setting, the economies of time and expense can be achieved by combining the suits into one action." 6 C. Wright & A. Miller, *supra,* at § 1442. The ultimate determination of the propriety of allowing impleader is, of course, vested in the sound

---

**3.** According to the third-party complaint, the $50,000.00 was in addition to the amount of tantalum that was replevied.

discretion of the court. *Cass v. Brown*, 41 F.R.D. at 286.

▮ The third-party claim need not be identical nor based on the same theory as the main claim. *Green v. Shepherd Construction Co.*, 46 F.R.D. 434, 437 (N.D.Ga. 1969); *see Tiesler v. Martin Paint Stores, Inc.*, 76 F.R.D. at 642. The Fifth Circuit, adopting this position, has held that

It is [well]-settled that impleader under Rule 14(a) does not require an identity of claims, or even that the claims rest on the same theory. Otherwise the purposes of the Rule would be defeated. Plainly, if the theories differ, the facts supporting each will differ, and the question is what degree of difference will be allowed in the facts relied upon. In answering this question, the purposes of the Rule, including the desire to avoid circuity of actions and to obtain consistent results, must be balanced against any prejudice which the impleaded party might suffer . . . .

*American Fidelity & Casualty Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956). Furthermore, the words "is or may be liable" in Rule 14(a) make it clear that "impleader is proper even though the third-party defendant's liability is not automatically established once the third-party plaintiff's liability to the original plaintiff has been determined." 6 C. Wright & A. Miller, *supra*, at § 1446; *see Travelers Insurance Co. v. Busy Electric Co.*, 294 F.2d 139, 145 (5th Cir. 1961).

▮ In applying the law to the case at bar, the common element to both claims, according to the respective pleadings, is clearly the title to the tantalum. The Defendant, James Abney, in his counterclaim asserts that Powell is liable to him because he was the owner of the goods at the pertinent times. The Defendant's claim in this regard is apparently based upon the September 14, 1978, release entered into between the Defendants and Union Carbide. Powell, in turn, claims that it paid money to Union Carbide as a result of a claim made against it by Union Carbide based on the allegation that Union Carbide was actually the owner of the goods, such claim allegedly

being made at a point in time just before Union Carbide allegedly made a contrary representation to Defendant Abney. Powell, therefore, claims that it was defrauded by Union Carbide and that if indeed Abney can establish that he has title to the goods, then Powell, in effect, claims contribution over from Union Carbide to the extent that it paid the Third-Party Defendant for those same goods. Additionally, to force the Plaintiff to first prosecute this action against the Defendants and only then to be allowed to proceed against Union Carbide increases circuity of action. Since there is little chance of prejudice to Union Carbide and there exists the very real possibility of inconsistent judgments, a dismissal of this pleader action would seemingly violate the spirit of Rule 14.

Union Carbide, in support of its motion, relies heavily on the case of *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749 (5th Cir. 1967). This reliance is misplaced. In the *Grasso* case, the plaintiff sued the United States Government for a refund of employment taxes. These taxes were assessed against the plaintiff on the ground that it was the employer of certain workers. The Government sought to implead third parties alleging that if the plaintiff was not liable to it then the third parties must be the liable employers. The district court held that "in order for the government to be able to implead the . . . third party defendants in this tax refund suit, it must appear that the liability of the two taxpayers is an either/or proposition as a result of the law or the facts." *Id.* at 752. Since the government conceded that neither defendant might be the employer, the court dismissed the third-party complaint. *Id.* The case at bar presents an entirely different situation. Unlike the *Grasso* case, in the current case either Defendant Abney or Union Carbide held title to the goods. Ultimate liability must necessarily rest upon one of those parties. The Court would not, therefore, be going through a mere meaningless exercise by trying everything at once. This Court thus finds that the Plaintiff has stated a proper third-party complaint under Rule 14.

■ Having found the Plaintiff's complaint to be proper, the issue of venue presents no problem. Union Carbide claims that venue is improper as it does no business in the Laredo Division of the Southern District of Texas. *See* 28 U.S.C. § 1393(a) (1976); *Torres v. Continental Bus System, Inc.*, 204 F.Supp. 347, 348 (S.D.Tex.1962). Independent venue requirements, however, need not be met where new parties are brought into the action under Rule 14 as impleader is regarded as ancillary to the main suit.[4] *See Seafood Imports, Inc. v. A. J. Cunningham Packing Corp.*, 405 F.Supp. 5, 8 (S.D.N.Y.1975); *cf. Dickey-john Corp. v. Richway Sales*, 78 F.R.D. 66, 67–68 (N.D. Ill.1977). Such a rule is quite proper as Rule 14 deals "with the presentation of claims in an already pending action, while the venue statutes are concerned with the institution of an original action." 1 *Moore's Federal Practice* ¶ 0.140 [6] (2d ed. 1975). Neither has Union Carbide shown that venue in the Laredo Division will result in a substantial hardship. *See generally Southern Milling Co. v. United States*, 270 F.2d 80, 84 (5th Cir. 1959) (dictum).

■ Union Carbide also moves to dismiss this complaint on the ground that it fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84–85 (1957); *Travelers Insurance Co. v. Busy Electric Co.*, 294 F.2d 139, 143 (5th Cir. 1961). This Court is unable to conclude on the pleadings that Powell would never be entitled to relief.

■ Union Carbide next contends that the Plaintiff's third-party complaint should be stricken for failure to aver the circumstances of fraud with particularity as required by Rule 9(b). *See* Fed.R.Civ.P. 9(b). Rule 9(b), however, must be read in conjunction with the Rule 8(a), which merely requires "a short and plain statement of the claim." *Id.* 8(a); *see* 5 C. Wright & A. Miller, *supra*, at § 1297. Indeed, Official Form 13 of the Federal Rules of Civil Procedure clearly illustrates that the federal rules merely require notice pleading.[5] Fed.R.Civ.P. Form 13; *see Conley v. Gibson*, 355 U.S. at 47–48, 78 S.Ct. at 102–03, 2 L.Ed.2d at 85–86. Nonetheless, this Court recognizes that "Rule 9(b) seeks to protect defendants from unjustified injury to their reputations and good will, by requiring a greater degree of particularity in averments of fraud than is ordinarily required by the concept of notice pleading established in Rule 8." *Lincoln National Bank v. Lampe*, 414 F.Supp. 1270, 1279 (N.D.Ill. 1976). The better practice is, therefore, to require the Plaintiff to allege fraud in such a way as to apprise Union Carbide of the time and place of the alleged fraudulent statements, the persons who made the statements, and the persons to whom such statements were made. *See, e.g., Altman v. Knight*, 431 F.Supp. 309, 314 n.4 (S.D.N.Y. 1977); *Lincoln National Bank v. Lampe*, 414 F.Supp. at 1279.

■ Finally, the Court, *sua sponte*, observes that the allegation of diversity contained in Plaintiff's original complaint is defective. *See generally Skidmore v. Syntex Laboratories, Inc.*, 529 F.2d 1244, 1248 n.3 (5th Cir. 1976). In invoking diversity jurisdiction, the plaintiff's complaint must specifically allege each party's citizenship and these allegations must show that the plaintiff and defendant are citizens of different states. *McGovern v. American Air-*

---

4. There is even some authority that a third-party defendant lacks standing to raise the issue of venue. *See Hilaire v. Shapiro*, 407 F.Supp. 1029, 1031 (E.D.N.Y.1976).

5. Paragraph number four of Form 13 merely states, "Defendant C.D. on or about _____ conveyed all his property, real and personal [or specify and describe] to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the note above referred to." Rule 84 specifically deems this allegation to be sufficient under the rules. *See* Fed.R.Civ.P. 84.

*lines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975). In the present case, Paragraph I of the Plaintiff's complaint states

> Plaintiff is an Illinois corporation with its principal office at 1122 Millford Ave., Rockford, Illinois; defendants James Abney and Virginia G. Abney, are both *residents* of Webb County, Texas where they may be served with process at 419 Surrey Road, Del Mar Hills; Defendant Fairmont Metals Co., Inc. is a Texas corporation with its registered agent being James Abney and its registered address being Constantinople at Eagle Pass, Laredo, Webb County, Texas.

*Plaintiff's Original Complaint* ¶ I (emphasis added). The complaint contains no allegation as to the principal place of business of Fairmont Metals; yet, for purposes of diversity, a corporation is deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c) (1976). Furthermore, there is no allegation as to the citizenship of the Abneys. The law is clear that an allegation of diverse residence does not satisfy the requirements for federal diversity jurisdiction. *Pattiz v. Schwartz*, 386 F.2d 300, 300–01 (8th Cir. 1968); *Burkhardt v. Bates*, 296 F.2d 315, 315–16 (8th Cir. 1961).

The Court deems that the best procedure to follow in this case is to allow the Plaintiff an opportunity to amend its original complaint in order to allow the Court to determine if there is, in fact, diversity jurisdiction over the initial claim. *See American Motorists Insurance Co. v. American Employers' Insurance Co.*, 600 F.2d 15, 16 (5th Cir. 1979); *see generally* 28 U.S.C. § 1653 (1976).

Accordingly, it is ORDERED that the Third-Party Defendant's motion to dismiss the impleader action is hereby DENIED. This case being a proper impleader action under Rule 14, the Third-Party Defendant's motion to dismiss the action for improper venue is also DENIED.

It is further ORDERED that the Third-Party Defendant's motion to dismiss this action for failure to state a claim upon which relief can be granted is hereby DENIED.

It is further ORDERED that the Plaintiff, within twenty (20) days from receipt of this order, file an amended complaint correcting the defective jurisdictional allegations. Failure to comply with this order will result in dismissal for lack of subject matter jurisdiction.

It is further ORDERED that the Plaintiff, within twenty (20) days of receipt of this order, amend its third-party complaint in order to more specifically aver the circumstances of the alleged fraud.