JOURNAL ENTRY AND OPINION
{¶ 1} In September 2003, defendant-appellant, Elizabeth Paige-Thompson, and third-party defendant Brenda Jones were involved in an automobile accident. At the time of the accident, Paige-Thompson carried automobile liability insurance coverage with American Family Insurance Company, with a policy limit of $25,000.
 {¶ 2} Jones sought medical treatment as a result of the accident. A portion of her medical bills were paid directly by Qualchoice, Jones' health insurance carrier.
 {¶ 3} Jones and her husband, Steven, retained attorney David Pomerantz to represent them. On November 12, 2004, prior to filing suit, the Joneses, through Pomerantz, reached a settlement with American Family. The settlement was for the full policy limit of $25,000.
 {¶ 4} The same day, Andrew Hollern, Casualty Claim Specialist for American Family, sent Pomerantz a fax confirming the settlement agreement. In the "Comments" section on the fax cover sheet, Hollern wrote, "Per our earlier conversation, we are in agreement that we will settle Ms. Jones' injury claim for the policy limit of $25,000 contingent on the resolution of the lien asserted by Kriener and Peters. Thanks, Andy."[1] At the time of settlement, the lien amount was $9,309.69.
 {¶ 5} On November 17, 2004, Hollern sent Pomerantz the settlement check and release. In the accompanying letter, he stated: *Page 5 
 {¶ 6} "This letter is in reference to the auto accident that occurred on September 5, 2003 and the agreement to settle your client's injury claim on November 17, 2004. Per our agreement, we have settled your client's injury claim for $25,000.
 {¶ 7} "Please have your client sign in the appropriate place and return the release to me. Also, according to our conversation, your firm will resolve the medical lien that has been asserted by Kriener and Peters on behalf of their client QUALCHOICE."
 {¶ 8} On November 22, 2004, Brenda and Steven Jones signed a release discharging Paige-Thompson from all claims relating to the accident. The release contained no mention of the Qualchoice lien.
 {¶ 9} Pursuant to its agreement with Pomerantz that he would settle the Qualchoice lien, American Family did not include Qualchoice's name as a payee on the check.[2] Before distributing the funds to the Joneses, Pomerantz put $9,309.69, the amount of Qualchoice's lien, in escrow, while he attempted to resolve the lien. On December 6, 2004, Pomerantz sent a letter to Hollern, in which he stated:
 {¶ 10} "In response to your recent call, please be advised that we are still trying to resolve the alleged subrogation lien of Qualchoice. We are holding Nine *Page 6 
Thousand Three Hundred Nine Dollars and Sixty Nine Cents ($9,309.69), the amount of the alleged lien, in Escrow.
 {¶ 11} "I have just been apprised that the plan in question is an ERISA Plan. As such, the Make Whole Rule still applies. Ms. Jones will file a declaratory judgment action to resolve this lien."
 {¶ 12} Subsequent to this letter, Pomerantz learned that the plan in question was not an ERISA plan and that the terms of the Plan specifically excluded the make whole rule.
 {¶ 13} Pomerantz never filed a declaratory judgment action on behalf of Brenda Jones to resolve the lien. On November 19, 2004, Qualchoice filed suit against Paige-Thompson to enforce its subrogation lien directly against her. Qualchoice demanded judgment in the amount of $9,309.69, the amount it claimed it had paid on behalf of Brenda Jones.
 {¶ 14} Paige-Thompson answered the complaint and filed a third-party complaint against the Joneses, in which she asserted that the Joneses, through Pomerantz, had agreed to satisfy the Qualchoice lien and, therefore, were liable for indemnity and/or contribution.
 {¶ 15} On behalf of the Joneses, attorney Pomerantz filed a motion to dismiss the third-party complaint. The trial court denied this motion, finding that "third-party plaintiff is not suing on release or settlement but are suing on an oral agreement which is not ERISA pre-empted." Despite this ruling, the trial court then denied *Page 7 
Paige-Thompson's motion to remove Pomerantz as counsel for the Joneses as a potential and necessary witness regarding the agreement.
 {¶ 16} The trial court granted the Joneses' motion for summary judgment. Paige-Thompson then filed a motion for leave to file a third-party complaint against Pomerantz and his law firm on the basis of fraud in procuring the settlement and breach of contract. The trial court denied this motion, ruling that "said defendant's cause of action against new party defendant is not one for contribution/indemnification per Civ.R. 14."
 {¶ 17} The trial court also denied Qualchoice's motion for summary judgment. After a bench trial, the trial court entered judgment in favor of Qualchoice in the amount of $18,567.03. Paige-Thompson now appeals.
 {¶ 18} We address her third assignment of error first. In that assignment of error, Paige-Thompson argues that the trial court erred in entering judgment for Qualchoice in the amount of $18,567.03, which included $9,257.34 paid by Qualchoice on behalf of Brenda Jonesafter the Joneses settled their claim against Paige-Thompson.
 {¶ 19} Civ.R. 8(A), regarding claims for relief, provides in pertinent part that, "[a] pleading that sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled. If the party seeks *Page 8 
more than twenty-five thousand dollars, the party shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought * * *."
 {¶ 20} Here, in its complaint, Qualchoice alleged that, as a result of the automobile accident on September 5, 2003, its insured had incurred medical bills in the amount of $9,309.69 and it had paid $9,309.69 to its insured pursuant to its policy. Qualchoice demanded judgment against Paige-Thompson in the amount of $9,309.69.
 {¶ 21} In light of its complaint, Qualchoice was limited at trial to recovering $9,309.69, the amount that it claimed it had paid on behalf of Jones. Qualchoice argues that it was entitled to the $18,567.03 judgment because it paid that amount on behalf of Jones prior to trial. In its complaint, however, Qualchoice claimed only that it had paid $9,309.69 on behalf of Jones. Qualchoice made no claim in its complaint that it had paid more than $9,309.69 on behalf of Jones, nor did it claim that Jones was still treating and it was continuing to pay medical bills on her behalf. Furthermore, Qualchoice never amended its complaint to claim future medical costs. Contrary to Qualchoice's argument, Paige-Thompson's failure to answer Qualchoice's request for admissions was not an amendment to the pleadings. Although Qualchoice may very well have paid over $18,000 on behalf of Jones, because its complaint, which was never amended, limited its claim to $9,309.69, it was limited to recovering that amount in a judgment.
 {¶ 22} Appellant's third assignment of error is sustained. *Page 9 
 {¶ 23} In her first assignment of error, Paige-Thompson contends that the trial court erred in granting summary judgment to third-party defendants Brenda and Steven Jones. We agree.
 {¶ 24} Civ.R. 56(C) provides that summary judgment is appropriate when: 1) there is no genuine issue of material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. We review the trial court's judgment de novo using the same standard that the trial court applies under Civ.R. 45(C). Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
 {¶ 25} In their motion for summary judgment, the Joneses argued three things: 1) Qualchoice's claim against Paige-Thompson was improperly brought in the common pleas court as it is preempted by the Employee Retirement Security Act (ERISA); 2) Qualchoice's claims against Paige-Thompson are barred by the release the Joneses signed; therefore, Paige-Thompson has no claim for indemnification/contribution against the Joneses and, further, there was no agreement to indemnify; and 3) the common law "make whole" rule bars any claim against the Joneses. None of these arguments have merit. *Page 10 
 {¶ 26} First, as set forth in the affidavit of Ted Traut, attached to Qualchoice's brief in opposition to the Joneses' motion, Brenda Jones is a covered dependant on the health plan subscribed to by her husband as an employee of the Catholic Diocese of Cleveland. Pursuant to29 U.S.C. § 1003(b), plans issued to churches do not fall under the purview of ERISA. Accordingly, since the Cleveland Catholic Diocese plan is a "church plan," it is not governed by ERISA, and the Joneses' arguments to the contrary are without merit.
 {¶ 27} Second, it is well settled that a tortfeasor who, with notice of an insurer's subrogation claim, settles with the insured party, remains liable to the subrogee. See, e.g., Hartford Acc. and Indem. Co.v. Elliot (1972), 32 Ohio App.2d 281. There is no dispute that at the time of settlement, Paige-Thompson and her liability insurer were aware of the Qualchoice subrogation lien. Thus, there is no dispute that Qualchoice can bring a claim against Paige-Thompson directly, despite the release signed by the Joneses.
 {¶ 28} Third, Qualchoice's plan is not subject to the "make whole" rule. Ohio courts have long recognized the "general equitable principles of insurance law that, absent an agreement to the contrary, an insurance company may not enforce such a right to subrogation until the insured has been fully compensated for her injuries, that is has been made whole." Northern Buckeye Edn. Council Group Health Benefits Plan v.Lawson, 103 Ohio St.3d 188, 2004-Ohio-4884, at ¶ 10. However, the Ohio Supreme Court has also held that "principles of equitable subrogation, including the *Page 11 
make-whole doctrine, do not override clear and unambiguous contractual provisions." Id. at ¶ 15-16.
 {¶ 29} Here, the Joneses' Qualchoice plan clearly and unambiguously states that the "make whole" rule does not apply to it. The plan states: "Qualchoice's right to subrogation will apply even if you have not been made whole, are not fully compensated or only partially recover for your loss."
 {¶ 30} Accordingly, the trial court erred in granting summary judgment upon any of these grounds argued by the Joneses.
 {¶ 31} Lastly, we consider the Joneses' argument that there was no agreement to indemnify Paige-Thompson. Contrary to the Joneses' contention that Pomerantz did not enter into any agreement to pay Qualchoice's subrogation claim, the record is clear that he did. In light of the correspondence set forth above, we find no genuine issue of material fact on this issue. The record is clear that Pomerantz agreed with American Family to "resolve" Qualchoice's subrogation claim. Pomerantz's letter of December 6, 2004 to Hollern, in which he noted that he was "still trying" to "resolve" the lien and, to that end, was holding the money in escrow, and further, that his client would "resolve this lien," specifically confirms the agreement. If he had not agreed to "resolve" the lien, either by paying it or by challenging it in a declaratory judgment action, there would have been no need for him to put the money in escrow.
 {¶ 32} Moreover, although American Family is not a party to this suit, we note that when Pomerantz put $9,309.69 of American Family's money in escrow, he *Page 12 
created a fiduciary relationship with American Family, in addition to his already existing fiduciary relationship with the Joneses.
 {¶ 33} "One is said to act in a `fiduciary capacity,' or to receive money or contract a debt in a `fiduciary capacity,' when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part." Spalding v. Coulson (1995), 104 Ohio App.3d 62, 80.
 {¶ 34} In Pippin v. Kern-Ward Bldg. Co. (1982), 8 Ohio App.3d 196, this court discussed the duties of an escrow agent as follows:
 {¶ 35} "* * * The depositary under an escrow agreement is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands.
 {¶ 36} "* * * [I]f an escrow agent neglects to carry out the instructions of a party to the escrow agreement, liability will result for the damages induced thereby.
 {¶ 37} "The duty of the escrow agent is therefore clear — to carry out the terms of the agreement as intended by the parties.
 {¶ 38} "* * * Escrow is controlled by the escrow agreement, placing the deposit beyond the control of the depositor and earmarking the funds to be held in a trustlike arrangement." (Citations omitted.) *Page 13 
 {¶ 39} Although Pomerantz asserts that he properly released the funds to his clients, we find nothing in the record indicating that American Family consented to the disbursement of the funds.
 {¶ 40} Because Pomerantz agreed with American Family, on behalf of the Joneses, to pay the Qualchoice lien, the trial court erred in granting summary judgment to the Joneses.
 {¶ 41} Appellant's first assignment of error is sustained.
 {¶ 42} After the trial court granted the Joneses' motion for summary judgment, Paige-Thompson filed a motion for leave to file a third-party complaint against Pomerantz and his law firm "based upon the fraudulent misconduct of defendants [and] their breach of contract * * *."[3] In her second assignment of error, Paige-Thompson contends that the trial court erred in denying this motion. She further contends that the trial court's ruling denying her motion to file a third-party complaint against Pomerantz compounded the trial court's error in denying her motion to remove Pomerantz as counsel for the Joneses, because he was a necessary witness to the agreement between him and American Family to settle the Joneses' case contingent upon paying the Qualchoice lien.
 {¶ 43} Civ.R. 14(A) provides, in pertinent part that "[a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause *Page 14 
a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." The rule further provides that the third-party plaintiff need not obtain leave of court to file such a complaint if he files the complaint not later than 14 days after he serves his original answer; otherwise he must obtain leave of the court to file such a motion.
 {¶ 44} The grant or denial of a motion for leave to file a third-party complaint is reviewed under an abuse of discretion standard. State exrel. Jacobs v. Mun. Ct. of Franklin Cty. (1972), 30 Ohio St.2d 239;Sako v. Jones Laughlin Steel Corp. (June 29, 1978), Cuyahoga App. No. 37439.
 {¶ 45} Civ.R. 14 is most commonly employed to join a third party who is liable to the defendant on a theory of contribution or indemnification. The focus of the rule is whether the third-party claim arose from the transaction or occurrence which is the subject matter of the primary claim. State ex rel. Jacobs, supra. In commenting upon Civ.R. 14(A), this court has stated:
 {¶ 46} "In order to bring a third-party claim under Civ.R. 14(A), the claim must be derivative of the outcome of the main claim. Renacci v.Martell (1993), 91 Ohio App.3d 217, 220. A third-party claim is inappropriate where the right or duty set forth in the third-party complaint alleged to have been violated does not emanate from the plaintiff's claim but exists wholly independent of it. Id., citingSoutheast Mortgage Co. v. Mullins (C.A.5, 1975), 514 F.2d 747, 750. Thus, in order to be the proper subject of a third-party action, the alleged right of the defendant to recover, or the duty *Page 15 
allegedly breached by the third-party defendant, must arise from the plaintiff's successful prosecution of the main action against defendant. Id. at 221." Spalding v. Coulson (2001), 147 Ohio App.3d 371, 379.
 {¶ 47} "It is well settled that Fed.Civ.R. 14, whose language is quite similar, does not require `an identity of claims or even that the claims rest on the same theory.' Rather, the focus of the rule is whether the third-party claim arose from the transaction or occurrence which is the subject matter of the primary claim." Torok v. Torok (Jan 22, 1987), Cuyahoga App. No. 51611, quoting American Fidelity and Casualty Co.,Inc. v. Greyhound Corp. (C.A.5, 1956), 232 F.2d 89, 92. Such a position is consistent with a policy to avoid duplicative testimony and a multiplicity of actions involving common issues of fact and law. Id., citing State ex rel. Jacobs, supra.
 {¶ 48} Here, Paige-Thompson's motion averred that she intended to seek indemnity and/or contribution from Pomerantz based upon his breach of his agreement to satisfy Qualchoice's lien, which it was now asserting against her. Both suits center on the circumstances surrounding American Family's settlement of the Joneses' claim against Paige-Thompson, i.e., who is liable to Qualchoice for payments it made on behalf of Brenda Jones? Whether couched as a breach of contract or fraud claim against Pomerantz, Paige-Thompson's claim against Pomerantz stems directly from the primary suit and is, in essence, a claim for indemnity. Her right to enforce the original settlement agreement, including the *Page 16 
indemnification provision, arises only upon Qualchoice's successful prosecution of its claim against her. Accordingly, the trial court abused its discretion in denying her motion to join Pomerantz and his law firm as third-party defendants.
 {¶ 49} Appellant's second assignment of error is sustained.
Reversed and remanded.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and MARY J. BOYLE, J., Concur.
[1] The fax cover sheet states that the fax contained 2 pages, including the cover sheet, but the second page of the fax was not supplied to the trial court.
[2] Clearly, if American Family had properly protected its insured's interest by putting Qualchoice's name on the check, this lawsuit would not have been necessary.
[3] Paige-Thompson did not attach a proposed third-party complaint to her motion. *Page 1